DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Bowling Green Municipal Court rendered in favor of appellee Amherst Village Management in a forcible entry and detainer action.
Initially, we note that appellee has not filed a brief in this appeal. Accordingly, pursuant to App.R. 18(C) we accept appellant's statement of the facts as correct. We have summarized those facts as follows.
Appellee operates the Amherst Village Apartments, a federally subsidized apartment complex in Bowling Green, Ohio. On November 20, 1998, appellant Sara Vestal and her then boyfriend, Josh Myers, entered into a rental agreement with appellee for the lease of unit 148 at Amherst Village Apartments. Under the terms of the rental agreement, Vestal and Myers' rent was subsidized under the "Section 8" program of the Department of Housing and Urban Development ("HUD"). Pursuant to a certification review of Vestal and Myers, they were responsible for rental payments of $136 per month and HUD paid the remaining portion of $502 per month. The tenants' portion of the rent was calculated solely on the basis of Josh Myers' income as Vestal was pregnant and caring for her and Myers' toddler. Vestal and Myers paid their rent through May 1999.
The rental agreement signed by the parties provides that rent was due on the first day of the month. Paragraph 5 of the agreement then states in relevant part:
 "If the tenant does not pay the full amount of the rent shown in paragraph #3 by the end of the 5th business day of the month, the landlord may collect a fee of $5.00 on the 6th day of the month, thereafter, the Landlord may collect $1.00 for each additional day the rent remains unpaid during the month it is due. The landlord may not terminate this agreement for failure to pay late charges, but may terminate this agreement for non-payment of rent, as explained in paragraph #23."
Paragraph 23 sets forth the conditions for terminating the tenancy and reads in part:
 "B. Any termination of this agreement by the landlord must be carried out in accordance with HUD regulations, State and Local Law and the terms of this agreement. The landlord may terminate this agreement for only:
 "1. The tenant's material non-compliance with the terms of this agreement.
"* * *
 "4. * * * The term Material Non-Compliance with the lease includes,
"* * *
 "4. Non-payment of rent or any other financial obligation due under the lease beyond any grace period permitted under State Law. The payment of rent or any other financial obligation due under the lease after the due date but within the grace period permitted under State Law constitutes a minor violation."
In addition to these obligations, the lease provides in Paragraph 4 that the amount of rent the tenant pays may be changed during the term of the lease if: "The income, the number of persons in the tenant's household or other factors considered in calculating the tenant's rent change and HUD procedures provided that the tenant's rent or assistance payment be adjusted to reflect the changes." Paragraph 4 further provides that "The landlord agrees to implement changes in the Tenant's rent or tenant's assistance payment only in accordance with the time frames and administrative procedures set forth in HUD's handbooks, instructions and regulations related to administration of multifamily subsidy programs." Finally, Paragraph 16 of the lease agreement obligates the tenant to notify the landlord immediately if any household member moves out of the rental unit.
In late May 1999, Vestal went to Michelle Hitt and notified her that Myers was moving out of the apartment. Vestal told Hitt that Myers was leaving that day and that she wanted him off of the lease. Vestal testified that Hitt told her to come back after she had discussed the issue with Myers. Hitt, however, denied that Vestal had told her in May that Myers was leaving. Hitt further testified at the hearing below that on June 1, 1999, she posted on Vestal's door a note that read "I want to meet with you to go a [sic] few very important matters. Please do this within ten (10) days." The notice did not indicate what matters Hitt wanted to discuss, but in the hearing below, Hitt stated that the notice dealt with Myers' leaving. Neither Vestal nor Myers paid rent for the month of June 1999. Rather, on June 7, 1999, Myers went to Hitt and signed a statement in her presence which reads: "I am leaving Amherst and I am signing off the lease. I live at 228 S. College Dr. Apt. H."
Hitt testified that on June 14, 1999, she both mailed and delivered to Vestal's premises a notice to leave the premises. That notice requested that Vestal and Myers vacate the apartment by June 25, 1999 and listed the reason as non-payment of rent. The notice further warned Vestal and Myers that if they did not leave the premises an eviction action would be initiated against them. Vestal testified that she never received either the mailed or delivered notice to vacate.
On July 12, 1999, appellee filed a complaint in forcible entry and detainer against Vestal and Myers. Appellee also asserted a claim for the June and July rent, totaling $272, and for rent of $136 for the month of August and for each month thereafter that Vestal unlawfully detains appellee's property. The record reveals that the Bowling Green Municipal Court served the summons and complaint by ordinary mail on both Vestal and Myers on July 21, 1999. The bailiff also apparently served the defendants by posting copies of the summons and complaint at the residence. The process mailed to Myers, however, was returned with a notation "No forward order on file."[1] Vestal testified at the hearing below that while she received the summons and complaint through the mail she did not receive the one that was allegedly posted on her apartment door.
Vestal answered the complaint with a general denial and further asserted an affirmative defense that appellee had breached the contract first by failing to perform the required rent recertification when she informed Hitt of a change in household income and composition in May 1999. Vestal asserted that if appellee had completed the recertification as required under the lease, she would have been current with her rental payments.
The matter came before the court for a hearing on September 2, 1999. Initially, Vestal, through counsel, informed the court that she was there on a special appearance and moved to dismiss the complaint for insufficiency of process. Vestal argued that service on her was insufficient in that it did not comply with Civ.Rs. 4.1(1) and 4.6. She further asserted that insofar as service on her complied with R.C. 1923.06, that statute is invalid and unconstitutional in that it contradicts the Civil Rules. The court took the matter under advisement and proceeded to take testimony on the pending action, noting that Vestal was not waiving her special appearance by presenting a defense. Michelle Hitt, the manager of the Amherst Village Apartments, testified that although Myers signed a statement on June 7, 1999 that he was living elsewhere, she believed he was still living in the apartment with Vestal. Hitt also admitted that she did not recertify Vestal when Myers signed the statement regarding his moving and that if Vestal had no income and Myers had moved out, a recertification would have reduced Vestal's share of the rent to zero. Finally, Hitt admitted that once she decides to evict a tenant, she has a policy of withholding recertification.
Vestal also testified at the hearing below. Vestal insisted that she had told Hitt at the end of May that Myers was moving out that day. Hitt, however, did not mention anything about recertification. Vestal further denied ever receiving any of the notices allegedly posted on her door. She did, however, admit to having received the summons and complaint through the mail.
On September 29, 1999, the magistrate issued a decision on the FED action and Vestal's motion to dismiss. Initially, the court addressed the motion to dismiss and concluded that Vestal was properly served with process pursuant to R.C. 1923.06. In reaching this conclusion, the court determined that Civ.Rs. 4.1 and 4.6 do not apply to forcible entry and detainer actions. The court then addressed the recertification issue and determined that appellee was not officially informed that Myers was leaving the apartment until the first week of June. Accordingly, the court determined that Vestal owed the original amount for June. The court further determined, however, that appellee should have initiated a recertification procedure shortly after becoming aware that Myers was no longer a resident in the apartment. The court based this determination on its earlier decision in Amherst Village v. Bock (Mar. 30, 1999), Bowling Green Municipal Court No. 99-CVG-00259, that simply because a tenant is "under notice of eviction" the landlord is not absolved from the need to recertify for the remainder of the tenancy, since the eviction action may be contested and ultimately denied. The court then determined that Vestal was in breach of the rental agreement for failure to pay rent for June, July and August and awarded a writ of restitution to appellee. The court ultimately dismissed without prejudice appellee's second cause of action for back rent upon appellee's request.
On October 12, 1999, Vestal filed objections to the magistrate's decision, contesting the findings on the service of process issue and the court's finding that Vestal was in default of her obligation to pay rent after appellee had been notified that Myers had left the apartment. On October 19, 1999, the trial court issued a decision and judgment entry on Vestal's objections which adopted the magistrate's decision in full. It is from that judgment that Vestal now appeals.
In her first assignment of error, Vestal asserts that the trial court erred in denying her motion to quash the summons and complaint. In particular, she argues that the Civil Rules control the service of process in FED actions and that R.C. 1923.06 violates Section 5, ArticleIV of the Ohio Constitution.
Section 5(B), Article IV of the Ohio Constitution provides that the Supreme Court of Ohio "shall prescribe rules governing practice and procedure in all courts of this state[.]" To that end, the Supreme Court of Ohio, in 1970, promulgated the Ohio Rules of Civil Procedure. Section5(B), Article IV of the Ohio Constitution further provides that the rules promulgated by the Supreme Court shall prevail over conflicting statutes. Civ.R. 1(A) states that the Civil Rules shall "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction" except as provided in Civ.R. 1(C). That rule provides that the Civil Rules shall not apply to forcible entry and detainer actions "to the extent that they would by their nature be clearly inapplicable." This language has come to mean that where a Civil Rule would impede the summary nature of an FED action, it will not apply to that action. _Colonial American Development Co. v. Griffith (1990),48 Ohio St.3d 72; State ex rel. GMS Management Co. v. Callahan (1989),45 Ohio St.3d 51.
Previously, the service of a summons and complaint in an FED action were clearly governed by the Civil Rules. Civ.R. 4.1(1) reveals that the basic method of service of original process in civil actions is by certified mail return receipt requested. Civ.R. 4.1(2) and (3) also allow personal and residence service where the plaintiff files a written request for such. Under residence service, however, service is only accomplished by leaving the process "at the usual place of residence of the person to be served with some person of suitable age and discretion then residing therein." Civ.R. 4.6(C) and (D) then provide that if the service by certified mail is refused or unclaimed, or if the service by personal or residence service is refused:
 "* * * the clerk shall forthwith notify, by mail, the attorney of record or if there is no attorney of record, the party at whose instance process was issued. If the attorney, or serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk."
However, effective March 30, 1999, R.C. 1923.06 was amended to allow for different service of process in FED actions. Under R.C. 1923.06(C), the clerk shall mail the process to the defendant by ordinary mail and shall serve the process by one of several methods set forth in R.C. 1923.06(D) or (E). R.C. 1923.06(D)(2)(c) allows for the second method of service to be accomplished by posting a copy of the summons and complaint in a conspicuous place on the subject premises. In the present case, the clerk served appellant by ordinary mail and by posting the process on the subject premises pursuant to R.C. 1923.06.
Vestal asserts that because the Civil Rules dealing with service of process do not frustrate the summary nature of FED actions, they must apply to such actions and R.C. 1923.06 violates Section 5(B), Article IV
of the Ohio Constitution. Accordingly, she asserts that service was never properly perfected on her and that the action below should have been dismissed. We disagree.
A forcible entry and detainer action "is a civil remedy provided by statute and intended to affect only the question of the present right to possess real property. `The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of possession of real estate in the cases especially enumerated by statute.'" _Housing Authority v. Jackson (1981),67 Ohio St.2d 129, 130-131, quoting 24 Ohio Jurisprudence 2d 455, Forcible Entry and Detainer, Section 2. To this end, R.C. 1923.06(A) states that service of the summons in an FED action shall be at least seven days before the day set for trial. Accordingly, once a complaint in an FED action is filed, a trial on the complaint is intended to be immediate. When service is made by certified mail, return receipt requested, the date of service is noted on the record when the return receipt is received by the clerk. However, when certified mail is undeliverable, i.e. unclaimed or refused, the U.S. Postal Service holds the mail for no fewer than three days and no more than fifteen days before returning it to the sender, unless the sender specifies fewer days. Domestic Mail Manual, Section F030.4.2(f), incorporated by reference at Section 111.4, Title 39, C.F.R. Accordingly, were Civ.R. 4.1(1) applicable to FED actions, the plaintiff in those actions may not learn whether service was perfected on the tenant for over two weeks after filing the complaint. The plaintiff would then have to follow the procedures set forth in Civ.R. 4.6 to perfect service on the tenant. We find that this delay clearly frustrates the summary nature of forcible entry and detainer actions and therefore hold that Civ.R. 4.1(1) does not apply to those actions.
Accordingly, the General Assembly was authorized to amend R.C. 1923.06
to allow for service of process by ordinary mail and simultaneous posting in FED actions. Because Vestal was served in a manner consistent with R.C. 1923.06, she was properly served with process and the trial court did not err in denying her motion to quash. The first assignment of error is not well- taken.
In her second assignment of error, Vestal asserts that the trial court erred in granting appellee a writ of restitution when appellee breached its obligation under the lease and under HUD regulations to recertify her. Vestal contends that if appellee had recertified her as required, she would have owed no rent for June, July and August and appellee would have had no grounds upon which to evict her.
Vestal is correct in her assertion that appellee was obligated to recertify her upon learning of the change in appellee's household. Chapter 5 of the HUD Handbook titled Occupancy Requirements of Subsidized Multifamily Housing Programs (the "Handbook"), sets forth a landlord's/owner's duties with respect to recertifying tenants covered by the Section 8 program. Section 5-8 of the Handbook requires all tenants to immediately notify the owner of changes in the household composition, including if any household member moves out of the rental unit. Section 5-13 then reads:
 "If the owner learns that the tenant's household has experienced one of the changes in income or household composition listed in paragraph 5-8, the owner must immediately notify the tenant in writing of the need to recertify. The owner's notice should refer the tenant to the lease clause which requires the interim review/adjustment, give the tenant 10 calendar days to respond to the notice and advise the tenant that his/her rent could be increased to the market rent if the 10 day deadline is not met."
Section 5-11 then sets forth the owner's responsibilities for processing an interim recertification. Under that section, upon learning of an interim change in the tenant's household composition, the owner must:
 "2. Interview tenant to obtain information on income, assets, family composition and allowances, and SS numbers of all family members age 6 or older.
"3. Verify tenant's income, assets and allowances.
 "4. Verify social security numbers of all family members age 6 or older not previously verified.
 "5. Complete form HUD-50059 and applicable HUD-50059 worksheet.
"6. Have tenant sign the HUD-50059.
 "7. Notify tenant of any rent increase resulting from the recertification."
After completing the interim recertification, the owner, pursuant to section 5-12 of the Handbook, must then notify the tenant of any change in rent or assistance payment. Section 5-12 further provides:
 "If the tenant's rent decreases because of an interim adjustment, the owner must make the decrease effective the first day of the month commencing after the date of the action which caused the decrease. The owner does not have to give the tenant 30 days notice of a rent decrease."
Vestal contends that because she informed appellee at the end of May that Myers was moving out that day, appellee was obligated to recertify her as of the end of May. It is uncontested that, had appellee recertified Vestal for the month of June, appellant would have owed nothing toward her rent in that it would have been entirely subsidized. Accordingly, appellee could not have evicted Vestal for nonpayment of rent. Hitt, the apartment manager, however, testified that she did not learn of Myers' leaving until June 7, 1999, when he came into her office and signed the statement regarding his new address. In his decision, the magistrate found that Hitt "formally" learned of Myers leaving on June 7, 1999. This finding, however, does not answer the ultimate question with regard to recertification. That is, what day did Myers actually move out. Upon learning of his leaving, Hitt was obligated to investigate to determine the actual date Myers left and then to recertify Vestal based on that date. If he left in May, a recertification of Vestal would have indicated that she owed no rent for June. If, however, Myers left in June, Vestal and Myers jointly would be obligated for the $136.
Because a recertification was never conducted and because it was therefore never properly determined what portion of the rent Vestal owed for the months of June, July and August, we conclude that the trial court erred in granting appellee a writ of restitution on its FED action. Accordingly, the second assignment of error is well-taken.
On consideration whereof, the judgment of the Bowling Green Municipal Court granting appellee a writ of restitution is reversed and vacated. Costs of this appeal are assessed to appellee.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., JUDGE
Richard W. Knepper, P.J., Mark L. Pietrykowski, J., JUDGE, CONCUR.
[1] Myers did not appear in the proceedings below and the court recognized that he no longer lived at the subject address. Accordingly, the lower court only addressed the action as it related to appellant Vestal and entered a default judgment of eviction against Myers.